UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JUSTIN DUANE HOWARD,

          Plaintiff,

v.

RICKEY J. COLEMAN,

          Defendant.

_____/

Case No. 1:24-cv-512

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection and ADA claims against Defendant Coleman. Plaintiff's Eighth Amendment and state law claims against Defendant Coleman will remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Assistant Chief Medical Officer Rickey J. Coleman in his individual capacity and official capacity. (Compl., ECF No. 1, PageID.1–5.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that "as far back as 2019," "a qualified licensed ophthalmologist" diagnosed him with "photophobia," "ocular albinism," and "blepharitis," "all of which require[] . . . tinted lenses in eyeglasses."[2] (*Id.*, PageID.4, 5.) Plaintiff also alleges that "two different qualified ophthalmologists contracted with the MDOC" have "diagnosed [Plaintiff] as needing . . . tinted lenses." (*Id.*, PageID.6.) Plaintiff claims that Defendant Coleman "is the person who approves all special medical accommodations for prisoners," and that Defendant Coleman has "denied the tinted lenses . . . without [Coleman] conducting an optometry diagnosis to support his determination." (*Id.*, PageID.4, 5.)

Specifically, Plaintiff alleges that on January 24, 2024, he "complained about the severe pain behind his eyes causing a severe headache," and in response, the LCF healthcare department informed Plaintiff that Defendant Coleman had "denied [Plaintiff's] special accommodation for the tinted eyeglass lenses prescribed by the ophthalmologist and he would have to wear 'solar shields.'" (*Id.*, PageID.5.) Plaintiff states that "solar shields" cannot be "worn inside the units because it violate[s] a posted rule and subject[s] him to disciplinary action." (*Id.*)

Plaintiff further states that he "is assigned to the LCF dog training program which requires him to have to go outside on a daily routine basis to train the dog assign[ed] to him," and that "[i]f he complains about not being able to remain outside for a long period of time, even wearing 'solar shields,' he will be removed from that assignment." (*Id.*, PageID.5–6.) Plaintiff alleges that as a result of his inability to have tinted lenses, he "has to suffer the onus of headaches, eyes bulging, and the lack of participating in out-of-door activities." (*Id.*, PageID.6.)

---

[2] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's complaint.

Based on the foregoing allegations, Plaintiff avers that Defendant Coleman has violated his rights under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment, as well as under the ADA and state law. (*Id.*, PageID.2, 6–8.) Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (*Id.*, PageID.9.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Eighth Amendment Claim

Plaintiff claims that Defendant Coleman has violated his Eighth Amendment rights by denying Plaintiff tinted eyeglass lenses "without [Coleman] conducting an optometry diagnosis to support his determination." (*See, e.g.*, Compl., ECF No. 1, PageID.4, 5, 7.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to

the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

7

> mistreatment under the Eighth Amendment. Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner. In order to state
> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.      Objective Component

Plaintiff alleges that "a qualified licensed ophthalmologist" diagnosed him with "photophobia," "ocular albinism," and "blepharitis," "all of which require[] . . . tinted lenses in eyeglasses." (Compl., ECF No. 1, PageID.4, 5.) Plaintiff also alleges that without these lenses, he has "severe pain behind his eyes causing . . . severe headache[s]." (*Id.*, PageID.5.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test. *But cf. Butler v. Scholten*, No. 1:19-cv-449, 2019 WL 4126470, at *5 (W.D. Mich. Aug. 30, 2019) (concluding that the prisoner-plaintiff failed to allege "that he face[d] a substantial risk of serious harm without access to tinted lenses" because although the prisoner-plaintiff "apparently received the lenses because his glaucoma cause[d] sensitivity to light," he did "not allege facts indicating that he face[d] any harm, let alone a substantial risk of serious harm, without access to tinted lenses while indoors"). !

### 2.      Subjective Component

As to Defendant Coleman's involvement in the denial of the tinted lenses for Plaintiff's eyeglasses, Plaintiff alleges that Defendant Coleman "is the person who approves all special medical accommodations for prisoners," and that Defendant Coleman has "denied the tinted lenses . . . without [Coleman] conducting an optometry diagnosis to support his determination." (Compl., ECF No. 1, PageID.4, 5.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although not specifically articulated by Plaintiff, his allegations suggest that, due to the ophthalmologist's diagnosis, he needs to wear some sort of tinted eyeglasses both indoors and outdoors; however, Plaintiff states that "solar shields" cannot

9

be "worn inside the units because it violate[s] a posted rule and subject[s] him to disciplinary action." (*Id.*, PageID.5.) Thus, Plaintiff's allegations suggest that he is able to wear solar shields only when he is outdoors, and that without a medical accommodation for "tinted lenses," he is unable to wear any tinted eyeglasses indoors.[3] Although Plaintiff has by no means proven his claim, at this time, the Court will not dismiss Plaintiff's Eighth Amendment medical care claim against Defendant Coleman regarding Coleman's denial of Plaintiff's medical accommodation for indoor tinted lenses.

### B.    Fourteenth Amendment Equal Protection Clause Claim

Plaintiff also alleges that Defendant Coleman violated his right to equal protection by denying Plaintiff tinted lenses. (*See, e.g.*, Compl., ECF No. 1, PageID.2, 6.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Disabled persons are not members of a protected class simply by virtue of their disability. *See City of Cleburne*, 473 U.S. at 445–46. Additionally, "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

---

[3] To the extent that Plaintiff would prefer to have tinted lenses, rather than solar shields when he is outdoors, this preference does not give rise to an Eighth Amendment claim because this "preference" is akin to a disagreement regarding medical personnel's treatment decisions, which is insufficient to state a claim. *See Darrah*, 865 F.3d at 372; *Briggs*, 801 F. App'x at 959; *Mitchell*, 553 F. App'x at 605.

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

 Here, although Plaintiff alleges in a conclusory manner that Defendant Coleman "failed to approve the special accommodation" to "allow Plaintiff to participate in all out of doors activities as all other similar[ly] situated prisoners who do not need special accommodation," Plaintiff fails to allege any *facts* to suggest that the others were similarly situated. (Compl., ECF No. 1, PageID.3) Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that he was treated differently than others who were similarly situated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### C.    ADA Claims

Plaintiff claims that Defendant Coleman violated his rights under Title II of the ADA, 42 U.S.C. §§ 12101–12213, by denying Plaintiff tinted lenses for his eyeglasses. (Compl., ECF No. 1, PageID.2, 7–8.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998). The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendant Coleman in his individual capacity and official capacity. (Compl., ECF No. 1, PageID.2, 5.) Because Plaintiff may not pursue ADA claims against Defendant Coleman in his individual capacity, any intended ADA claims against Defendant Coleman in his individual capacity will be dismissed.

As to Plaintiff's official capacity ADA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must

12

determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

Turning to the merits of Plaintiff's ADA claims, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability. As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA is not an appropriate federal cause of action to challenge the sufficiency of medical treatment because "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *see, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").[2]

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of*

Here, Plaintiff claims that Defendant Coleman violated the ADA and discriminated against Plaintiff by denying Plaintiff tinted lenses for his glasses. And, Plaintiff alleges in a conclusory manner that Defendant Coleman "failed to approve the special accommodation" to "allow Plaintiff to participate in all out of doors activities . . . ." (Compl., ECF No. 1, PageID.3.) However, Plaintiff's own allegations show that, rather than being denied the opportunity to participate in programs, he in fact participated in outdoor activities, including working as a dog handler, and he was provided with "solar shields" to use when outdoors; whether the provision of the solar shields for use outdoors, and, as alleged, no tinted eyeglasses indoors, is sufficient to address Plaintiff's serious medical needs raises an Eighth Amendment claim, but does not raise a viable ADA claim.

Accordingly, for these reasons, Plaintiff fails to state a claim under the ADA, and his ADA claims will be dismissed.

## D.     State Law Claim

Plaintiff claims that Defendant Coleman violated his rights under state law. (Compl., ECF No. 1, PageID.8.)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendant Coleman violated state law fails to state a claim under § 1983.

---

*America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

14

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Because Plaintiff continues to have pending a federal claim against Defendant Coleman, the Court will exercise supplemental jurisdiction over his state law claim against Defendant Coleman.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's Fourteenth Amendment equal protection and ADA claims against Defendant Coleman will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment and state law claims against Defendant Coleman remain in the case.

An order consistent with this opinion will be entered.


Dated:   July 23, 2024                              /s/ Ray Kent
                                                    Ray Kent
                                                    United States Magistrate Judge